# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONALD R. BARNARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-CV-404-GKF-FHM |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the court is the Report and Recommendation of United States Magistrate Judge Frank H. McCarthy on judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits [Dkt. #23] and the Objections thereto filed by plaintiff, Donald R. Barnard ("Barnard"). [Dkt. #24]. The Magistrate Judge concluded the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts, and that substantial evidence in the record supports the ALJ's decision. [Dkt. #23 at 7]. He recommended the Commissioner's decision be affirmed. [*Id.*].

## I. Procedural History

On June 15, 2010, Barnard filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income alleging disability beginning October 29, 2009. [R. 55]. The claims were denied initially and on reconsideration. [*Id.*]. An administrative hearing was held before ALJ Lantz McClain on January 30, 2012. [R. 2-32]. By decision dated March 15, 2012, the ALJ found that Johnson was not disabled. [R. 55-69]. On May 14, 2013, the Appeals Council denied review.

[R. 33-38]. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." However, even under a de novo review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). Disability is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(c), 416.912(c). "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. A plaintiff is

disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth the five steps in detail). The claimant bears the burden of proof at steps one through four. *Williams*, 844 F.2d at 751 n.2. At step one, a determination is made as to whether the claimant is presently engaged in substantial gainful activity. *Id.* at 750. At step two, a determination is made whether the claimant has a medically determinable severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *Id.* at 750-51. At step three a determination is made whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Id.* at 751. If it is, the claimant is entitled to benefits. *Id.* If it is not, the evaluation proceeds to the fourth step, where the claimant must show that the impairment prevents him from performing work he has performed in the past. *Id.* If the claimant is able to perform his previous work, he is not disabled. *Id.* If he is not able to perform his previous work, then the claimant has met his burden of proof, establishing a prima facie case of disability. The evaluation process then proceeds to the fifth and final step: determining whether the claimant has the residual functional capacity ("RFC")[1] to perform other work in the national economy in view of his age, education and work experience. *Id.* The Commissioner bears the burden at step five, and the claimant is entitled to benefits if the

---

[1] A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. *Williams,* 844 F.2d at 751.

Commissioner cannot establish that the claimant retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.*

### III. Claimant's Background

Barnard was born on November 30, 1958. [R. 131]. He claims he has been unable to work since October 29, 2009 due to depression, generalized anxiety and social phobia. [R. 55]. He has a General Equivalency Diploma. [R. 5]. He formerly worked as a dog breeder and plastic press molder. [R. 6-10].

### IV. The ALJ's Decision

At Step One, the ALJ determined Barnard had not engaged in substantial gainful activity since October 29, 2009. [R. 57]. At Step Two, he found Barnard has the following severe impairments: depression, generalized anxiety and social phobia. [R. 57-58]. At Step Three, the ALJ determined the claimant's impairment or combination of impairments was not of a severity to meet or medically equal the criteria of any listed impairment. In making this determination, he found that Barnard had mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence or pace; and had experienced no episodes of decompensation which have been of extended duration. [R. 58].

The ALJ determined Barnard has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but is limited to simple, repetitive tasks; he can relate to supervisors and peers only on a superficial basis; and he can have no more than incidental contact with the public. [R. 59]. Based on the testimony of a vocational expert ("VE"), the ALJ found that Barnard is able to perform his past relevant work as a plastic press molder, a job performed at the light unskilled level. [R. 65]. Accordingly, he concluded that Barnard has not been under a disability, as defined in the Social Security Act, from October 29, 2009 through the

4

date of the decision. [*Id.*]. The case was thus decided at Step Four of the five-step sequential process.

In his objection, Barnard asserts (1) the ALJ failed to make a proper determination at Step Four; (2) the ALJ failed to properly consider the medical and nonmedical source evidence; and (3) the ALJ failed to perform a proper credibility determination.

## V. Analysis

### A. Step Four Determination

Step Four of the sequential analysis is comprised of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In the first phase, the ALJ must evaluate a claimant's physical and mental RFC; in the second phase, he must determine the physical and mental demands of the claimant's past relevant work; and in the third and final phase, he must determine whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *Id.*

In the hearing, the ALJ posed the following hypothetical to the VE:

> I'm not going to give you any exertional limitations, but [let's] say this individual is limited to doing simple, repetitive tasks and can only relate to supervisors and peers [o]n a superficial basis, and have no more than incidental contact with the public. By no more than incidental contact with the public and relate to supervisors and peers on a superficial basis I would think those would be satisfied . . . by jobs, for example, as a janitor cleaning an office building in the evenings where the janitor would just basically work by himself or herself and not have any real contact with the public. May bump into [a tenant] occasionally, and wouldn't really have to work with a supervisor and peers except just in passing.

[R. 26-27]. He then asked the VE whether such an individual could do "any of the kind of work [Barnard had] done in the past," and she responded that the job of plastic press molder met his hypothetical. [R. 27]. The ALJ followed up, asking her whether the plastic press molder job is simple, repetitive work, to which she responded affirmatively. [*Id.*]. In response to the ALJ's

questions, the VE affirmed the job required minimal contact and Barnard mostly tended the machine alone. [*Id.*]. The VE testified there is no contact with the public in the job. [*Id.*].

In his decision, the ALJ found Barnard had the RFC to perform a full range of work at all exertional levels but is limited to simple repetitive tasks. [R. 59]. Additionally, he can relate to supervisors and peers only on a superficial basis, and have no more than incidental contact with the public. [*Id.*]. Based the VE's testimony, he concluded Barnard is capable of performing past relevant work as a plastic press molder performed at the light unskilled level and found that the job does not require performance of work related activities precluded by the RFC. [R. 65].

Barnard complains the RFC and hypothetical were fatally flawed because they did not include the findings in Step Three that Barnard has moderate difficulties in social functioning and maintaining concentration, persistence or pace.

However, as the Magistrate Judge noted, the findings at Step Three are not expressed in work-related limitations and are not appropriate for inclusion in the hypothetical posed for purposes of determining the RFC. *See Chrismon v. Colvin*, 531 Fed. Appx. 894, 897-98 (10th Cir. 2013) ("[T]he limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process," while "[t]he mental RFC assessment [MRFCA] used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings . . . and summarized on the [Psychiatric Review Technique].").

Here, the state agency reviewing expert, Janice B. Smith, Ph.D, completed an MRFCA in which she found Barnard was "markedly limited" in his ability to understand and remember detailed instructions, carry out detailed instructions and interact appropriately with the general

public. [R. 240-241]. In the Functional Capacity Assessment section of the MRFCA, she concluded Barnard can perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis and adapt to a work situation, but cannot relate to the general public. [R. 242]. The ALJ included these limitations in the hypothetical, elaborated on the limitations and thoroughly questioned the VE about the requirements of Barnard's previous work as a plastic press molder. Therefore, the court rejects Barnard's argument that the hypothetical and RFC were flawed.

### B. Consideration of Medical and Nonmedical Source Evidence

Barnard asserts the ALJ erred in rejecting the opinions of his mental health care giver, Bonnie Brazwell, rendered on an MRFCA form dated January 10, 2012. [R. 356-357]. Ms. Brazwell, a Licensed Professional Counselor/Licensed Alcohol and Drug Counselor candidate, checked boxes indicating Barnard has severe limitations in his ability to work in coordination with or proximity to others without being distracted by them and to travel in unfamiliar places or use public transportation. [*Id.*]. She checked boxes indicating he has marked limitations in 16 other areas, including all categories of "understanding and memory" and "social interaction," five out of eight categories related to "sustained concentration and persistence" and three out of four categories of "adaptation." [*Id.*]. The "Remarks" section—which inquires whether drug or alcohol abuse is a material factor contributing to the disability and whether the claimant would still be suffering from a severe mental impairment if he were not using drugs or alcohol—was left blank. [*Id.*].

Barnard argues the ALJ did not properly evaluate Ms. Brazwell's opinion as an "other medical source" by applying the correct legal framework set out in SSR 06-3p and 20 C.F.R. §

7

404.1527 and 20 C.F.R. § 416.927.[2]  This argument is unfounded.  While the ALJ did not explicitly recite the appropriate factors, his discussion reflects he considered them.  The ALJ noted the conflict between the MRFCA and Ms. Brazwell's September 22, 2011 letter to Barnard's probation officer stating that Barnard "appears to be stable at this time due to him taking his medication as prescribed." [R. 64, 332].  He stated that while he had considered the evidence submitted, it "does not show objective medical evidence of a medically determinable physical impairment." [R. 64].  He noted that Licensed Professional Counselors/Licensed Alcohol and Drug Counselor candidates are not acceptable medical sources who can establish whether an individual has a medically determinable impairment. [*Id.*].

Barnard also asserts the ALJ improperly discounted the treating records of Justin Ashlock, D.C., who performed chiropractic manipulations on Barnard from July 5, 2011 through October 25, 2011.  [R. 63, 333-355].  The ALJ noted that a diagnosis was not documented in the records. [R. 63].  Citing 20 C.F.R. §§ 404.1513(a) and (d)(1), he stated that chiropractors are not acceptable medical sources who can establish whether an individual has a medically determinable impairment, but are "other sources" whose evidence may be used to show the severity of an impairment or how it affects an individual's ability to work.  [R. 63-64].  The ALJ stated he had considered the evidence submitted, but it did not show objective medical evidence of a medically determinable physical impairment. [R. 64].  The court finds no reversible error in the ALJ's consideration of Dr. Ashlock's records.

Barnard contends the ALJ erred in according "great weight" to the opinions of the mental consultative examiner, Maribeth Spanier, Ph.D.  The ALJ is required to "consider all evidence in

---

[2] The regulations set forth the factors to be considered in evaluating opinions from "acceptable medical sources," including the examining relationship, the treatment relationship, relevant evidence supporting an opinion, consistency of an opinion with the record as a whole and whether the opinion comes from a specialist. *See*  SSR 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927.  SSR 06-3p, a policy interpretation ruling, provides the same factors can be applied to opinion evidence from "other sources."

8

[the] case record when [he] make[s] a determination or decision whether [claimant is] disabled." 20 C.F.R. § 404.1520(a)(3). "He may not pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). However, "[o]ur limited scope of review precludes this court from reweighing the evidence or substituting our judgment for that of the [Commissioner]." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Where the reviewing court can follow the adjudicator's reasoning in conducting its review and can determine that correct legal standards have been applied, "merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary*, 695 F.3d at 1166.

The ALJ discussed at length the findings in Dr. Spanier's mental status examination ("MSE") report. [R. 61-62]. He gave "great weight" to Dr. Spanier's opinion because "she had the opportunity to examine the claimant and offered her opinion based upon the examination signs and findings," and he stated that her findings "have been incorporated into the claimant's residual functional capacity." [R. 62].

The ALJ also discussed all other medical evidence of record, including records of Barnard's treating psychiatrist, Elka Serrano, M.D. He referenced Dr. Serrano's note on October 26, 2010, in which she stated Barnard had presented for a pharmacological management appointment, his mood was euthymic and his affect congruent; he denied suicidal/homicidal ideation and denied psychosis; and his attention and concentration were adequate. [R. 62, 306]. Her diagnosis was major depression and alcohol dependence. [*Id.*]. The ALJ noted that in September 2010 Barnard reported legal issues including a pending court date for a protective order and stated his medicine made him calm. [R. 62, 312]. He referenced a medical record from November 2010 indicating Barnard exhibited high blood pressure and cholesterol. [R. 62, 311].

9

He stated Barnard's substance abuse discharge summary dated December 4, 2010 indicated his problem was "court" and he was upset over needing intensive outpatient treatment to get his license back. [R. 62, 260-261]. The master level therapist noted Barnard's discharge diagnoses included alcohol dependence, cocaine dependence in full remission and cannabis dependence in full remission. [*Id.*].

The ALJ discussed in detail the December 9, 2010 report of consulting physician Ashley Gourd, M.D. [R. 62-63, 277-283]. He noted her assessment of Barnard "included depression and anxiety, yet pleasant and cooperative for examination, social phobia, and chronic low back and neck pain with no significant strength or range of motion deficits on examination." [R. 63, 278]. He accorded "great weight" to Dr. Gourd's opinion regarding her medical finding as "[s]he had the opportunity to examine the claimant and offered h[er] opinion based upon the examination signs and findings." [R. 63].

The ALJ reviewed treatment plan notes prepared by Jenifer White, M.S.[3] She stated Barnard had reported thoughts of loneliness, anxiety and depression, and had stated "drugs are my life" but reported being sober for "a little over a few months." [R. 63, 296]. White's treatment plan diagnosis dated January 24, 2011 included major depression, social phobia and alcohol dependence. [R. 63, 298-299].

The ALJ noted medical management records dated September 29, 2011 indicate Barnard had remained sober, "except a beer last month when my brother came by." [R. 63, 329]. Claimant was "[a]lert and oriented x 3" and well groomed with adequate hygiene and attention/concentration. [*Id.*]. He denied suicidal/homicidal ideation or psychosis. [*Id.*]. The doctor's diagnoses included major depression, social phobia and history of alcohol dependence.

---

[3] The ALJ incorrectly identifies Jenifer Locus White as Jenifer Locus. [R. 63, 297].

10

[*Id.*].⁴ The ALJ accorded "great weight" to the doctor's opinion because "she had the opportunity to treat the claimant and offered her opinion based upon her treatment history and findings." [R. 63].

The ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he considered all of Barnard's impairments. Barnard essentially asks the court to reweigh the opinions. However, the "limited scope of review precludes this court from reweighing the evidence or substituting [its] judgment for that of the Commissioner." *Flaherty*, 515 F.3d at 1071.

### C. Credibility Determination

Barnard challenges the ALJ's credibility findings regarding him and the third party function report of his ex-wife.

The Tenth Circuit has stated:

> Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.

*Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quotations and citations omitted). Further, "[t]he ALJ enjoys an institutional advantage in making the type of determination at issue here" because "[n]ot only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001).

The ALJ "[did] not assign great weight to the *Third Party Function Report*." [R. 60]. He opined that "the medical evidence of record as explained throughout this decision does not

---

⁴ The ALJ incorrectly identifies the doctor as Dr. Serrano. [R. 63]. The record indicates the doctor was Sarah Land, D.O., a psychiatrist. [R. 329].

support certain aspects of Ms. Barnard's opinion, such as excessive physical limitations." [R. 60-61]. His discussion of the medical evidence, as summarized above, supports this statement. For example, Dr. Gourd's assessment of Barnard noted "depression and anxiety . . . pleasant and cooperative for examination," social phobia, and chronic low back and neck pain with "no significant strength or range of motion deficits on examination." [R. 63, 278]. The court will not disturb the ALJ's credibility assessment concerning the Third Party Function Report.

With respect to Barnard, the ALJ "[did] not discount all of the claimant's complaints" but found "the evidence within the record demonstrates that even though[] the claimant does have medically determinable mental impairments . . . they are not severe enough to prevent the claimant from participating in substantial gainful activity, given his residual functional capacity . . . that the claimant's residual functional capacity is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of his symptoms." [R. 64]. Additionally, he noted that Barnard's work history showed he worked "only sporadically, if at all, prior to the alleged disability onset date, which raised the question as to whether the claimant's continuing unemployment was actually due to medical impairments," and "the claimant's work history coupled with his history of substance abuse and legal issues do not lend great support to his statement about an inability to work because of his mental illness." [R. 65]. Finally, the medical evidence reviewed above supports the ALJ's finding that Barnard was not disabled.

The ALJ's findings as to credibility are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citations and internal quotation marks omitted). Accordingly, the court will not disturb the ALJ's credibility assessment of Barnard.

## VI. Conclusion

For the reasons set forth above, the court overrules Barnard's Objections to the Magistrate Judge's Report and Recommendation. [Dkt. #24]. The Magistrate Judge's Report and Recommendation [Dkt. #23] is accepted, and the decision of the Commissioner is affirmed.

ENTERED this 31st day of July, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT